UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
UNITED STATES OF AMERICA,

    -against-

MICHAEL RUTLEDGE,             **MEMORANDUM AND ORDER**
                                                Case No. 23-CR-269 (FB)
               Defendant.
---------------------------------------------------x

*Appearances:*                                          *For the Defendant:*
*For the Government:*                         MICHAEL WEIL
JAMES R. SIMMONS                       Federal Defenders of New York
Assistant United States Attorney     One Pierrepont Plaza
271 Cadman Plaza East                   16th Floor
Brooklyn, NY 11201                          Brooklyn, NY 1120

**BLOCK, Senior District Judge:**

        Defendant Michael Rutledge ("Rutledge") moves to suppress evidence obtained pursuant to several warrants. On April 17, 2024, the Court heard oral argument. For the following reasons, Rutledge's motion is denied.

## I.     BACKGROUND

        Rutledge is charged with Hobbs Act Robbery, Hobbs Act Robbery Conspiracy, and use of a firearm during a crime of violence in connection with the robbery of a store on February 10, 2023, in Brooklyn. Rutledge's codefendant, Angel Gomez, allegedly held the store's cashier at knifepoint, stole $4,500, and pistol-whipped and shot an innocent bystander customer in the hip. Rutledge

allegedly served as the driver of a getaway vehicle and drove Gomez to Rutledge's girlfriend's Bronx apartment.

The Government obtained three search warrants: (1) a warrant on March 14, 2023, for cell site location information ("CSLI") related to a phone linked to Mr. Rutledge; (2) a warrant on June 9, 2023, for Rutledge's girlfriend's apartment; and (3) a warrant on June 9, 2023, for Rutledge's cell phone. Rutledge moves to suppress the CSLI motion for lack of probable cause and the latter two motions for lack of probable cause and under the fruit of the poisonous tree doctrine.

### A. March 14, 2023, CSLI Warrant

In her affidavit ("CSLI Affidavit") in support of the CSLI search warrant ("CSLI Warrant"), Special Agent Megan Quinn described why Rutledge and his suspected co-conspirator, Lamont Sullivan, committed the robbery. As to Rutledge's involvement, the CSLI Affidavit cited surveillance video showing Rutledge waiting near the getaway car during the robbery, driving the car before the robbery, and walking away from the car in similar clothing law enforcement had previously observed him in, as well as license plate readings.

The CSLI Affidavit noted that, based on a review of toll records obtained from T-Mobile, Rutledge and Sullivan's phones communicated with one another 11 times between 6:23 p.m. and 7:56 p.m., several hours before the robbery. The

2

flurry of calls stopped after the robbery, and the two phones did not communicate at any other point between January 1, 2023, and February 16, 2023.

As to Sullivan's involvement, the CSLI Affidavit stated that law-enforcement records reflect that:

> Sullivan's height ranges from five feet three inches to five feet six inches and his weight is approximately 150 pounds, which is consistent with the physical description provided by witnesses, and seen by law enforcement in surveillance footage, of the perpetrator and shooter who appears to be in a black hooded sweatshirt and who committed the shooting as being a short male of average build.

Agent Quinn's theory was that the 11 phone communications suggested that Rutledge and Sullivan used the phones to plan and coordinate the armed robbery, but once Rutledge picked Sullivan up to commit the robbery, there was no reason for them to communicate further via phone. Agent Quinn concluded that there was probable cause to believe that the subject phones' CSLI "for the period from February 9, 2023, at 12:00 a.m to February 12, 2023 at 12:00 a.m. constitutes evidence of the SUBJECT OFFENSES and will assist law enforcement in confirming the locations of two of the suspects of this investigation." Magistrate Judge Scanlon authorized the warrant.

The CSLI returns placed Rutledge's cell phone in the vicinity of (1) where Rutledge was observed on surveillance video pacing near the getaway car while the armed robbery was taking place and (2) where he was observed on surveillance

video hours later in the Bronx. The CSLI returns helped identify Gomez as the alleged shooter and exonerated Sullivan.

### B. June 9, 2023, Apartment and Cell-Phone Warrants

On June 21, 2023, law enforcement officers executed warrants to search Gomez's apartment and Rutledge's girlfriend's apartment and seize and search Rutledge's cell phone. The affidavit (the "Apartment Affidavit") in support of the warrant application to search Rutledge's girlfriend's apartment (the "Apartment Warrant") explained that evidence of the robbery might be found at Rutledge's girlfriend's apartment because he was seen parking near there and walking towards the apartment about 90 minutes after the robbery, and he had visited the apartment multiple times since. It also relied on the CSLI returns, which placed Rutledge in the vicinity of his girlfriend's apartment after the robbery.

Contemporaneous with the search of Rutledge's girlfriend's apartment, officers also executed a warrant to seize and search Rutledge's cellphone. Relying in part of the CSLI returns, the affidavit ("Cell-Phone Affidavit") in support of this warrant ("Cell-Phone Warrant") stated that Rutledge had his phone on him the night of the robbery and communicated with Gomez via phone.

Because the premises and cellphones were located in the Bronx, Magistrate Judge Sarah Netburn of the Southern District of New York authorized these

warrants. The search of the apartment found the clothes Rutledge wore on the night of the robbery and firearms-related evidence, while the cell-phone search discovered messages between Rutledge and Gomez allegedly corroborating their roles in the robbery.

## II.   DISCUSSION

### A. CSLI Warrant

Because the latter two warrants rely on the CSLI returns, the central issue is whether the CSLI Warrant was supported by probable cause, as required by the Fourth Amendment. *See Carpenter v. United States*, 585 U.S. 296, 310 (2018) (citizens have legitimate expectation of privacy in CSLI). Probable cause is "demonstrated where a totality of circumstances indicates a fair probability that contraband or evidence of a crime will be found thereby, which does not demand hard certainties, but it does require more than a hunch." *United States v. Lauria*, 70 F.4th 106, 128 (2d Cir. 2023) (cleaned up). In *Lauria*, the Second Circuit called for "some caution in assessing probable cause" in CSLI cases. *Id.* at 128-29.

Because magistrate judges authorized these warrants, the Court presumes that the Government's search was reasonable, which entitles the judges' findings of probable cause to "considerable deference." *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007). Here, the Court's role is to simply ensure that the totality of

circumstances afforded the issuing judge "a substantial basis" for making the requisite probable cause determination, rather than conducting *de novo* review. *United States v. Garcia*, No. 3:20-CR-00058 (KAD), 2023 WL 4850553, at *4 (D. Conn. July 28, 2023) (quoting *United States v. Thomas*, 788 F.3d 345, 350 (2d Cir. 2015)).  Based on the facts known at the time the warrant is sought, the Court must determine whether the totality of circumstances afforded Magistrate Judge Scanlon a substantial basis for concluding that a totality of circumstances indicated a "fair probability that contraband or evidence of a crime will be found" with Rutledge's CSLI.  *Lauria*, 70 F.4th at 128 (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

To justify the CLSI Warrant, the Government can show probable cause that Rutledge (1) was carrying his cell phone at the time of the robbery, such that his phone's location would yield evidence of the robbery; or (2) that he used his cellphone at an earlier time in connection with or to facilitate the robbery.  *See United States v. Bertini*, No. 23 CR. 61 (PGG), 2023 WL 8258334, at *7 (S.D.N.Y. Nov. 29, 2023).

The Government states that it has satisfied both possible justifications.  For the first justification, the CSLI Affidavit posited that Rutledge's cellphone was "active both before and after the armed robbery."  For the second, Rutledge had a flurry of calls — eleven in total — with Sullivan within a short period of time,

several hours prior to the robbery. However, Rutledge and Sullivan had no other phone communications outside this brief window, and these phone calls stopped shortly before the robbery. Based on this activity and Rutledge's alleged involvement, the Government inferred that Rutledge picked Sullivan up to commit the robbery.

Affording Magistrate Judge Scanlon's probable-cause finding the deference to which it is entitled, the Court concludes that the CSLI Affidavit established probable cause to believe that the CSLI records would yield evidence of a crime. Its theory was reasonable, putting together a flurry of calls in a short window to someone who resembled the co-conspirator, with no other calls between them. Moreover, the uncontroverted probable cause that Rutledge committed the crime buttresses the conclusion because, as the Second Circuit recognized in the CSLI context, "probable cause as to a person's criminal conduct can sometimes inform probable cause to search a place used or frequented by that person or to obtain records for electronic devices linked to that person." *Lauria*, 70 F.4th at 130 n.14. That the theory was ultimately wrong does not compel a different conclusion.[1]

---

[1] Although it turned out that Sullivan was not involved in the crime, Magistrate Judge Scanlon did not know that at the time she granted the application. Rutledge does not claim that the affidavit contained any falsehoods and is thus not seeking a *Franks* hearing. *See Franks v. Delaware*, 438 U.S. 154 (1978).

A survey of the recent caselaw in the Second Circuit supports the conclusion that these factual allegations are sufficient to establish probable cause. To be sure, affiants' blanket generalizations about "people who commit crimes" carrying cell phones, *see Bertini*, 2023 WL 8258334, at *9 (agent's "training and experience" and common sense were insufficient to establish probable cause to search CSLI data), or factually "sparse" warrant affidavits pertaining to cell phone use, *see Lauria*, 70 F.4th at 130, are insufficient to establish particularized, case-specific probable cause. However, factual allegations that tie the phone to the specific crime suffice. *See, e.g., United States v. Baines*, No. 20-CR-00261 (MPS), 2022 WL 35807, at *2, 4 (D. Conn. Jan. 4, 2022) (probable cause for CSLI warrant where burglary suspects used their cell phones to "communicate with each other during burglaries" and "to document their exploits during and after burglaries").

While the CSLI Affidavit's attempt to link the cell phone to the robbery is more attenuated than physical or video evidence of the phone at the scene of the crime, it need not be "airtight," *United States v. Disla Ramos*, No. 22-CR-431 (LJL), 2022 WL 17830637, at *7 (S.D.N.Y. Dec. 21, 2022), and it contained particularized facts and specific detail as to the flurry of calls between Rutledge and Sullivan. Indeed, in a similar case, Judge Liman concluded that a CSLI warrant was supported by probable cause where the cell phone "was tied to the

8

crime through evidence that an individual using the phone was in contact with another participant in the crime approximately an hour after the robbery." *United States v. Disla Ramos*, No. 22-CR-431 (LJL), 2022 WL 17830637, at *7 (S.D.N.Y. Dec. 21, 2022). While the CSLI Affidavit's theory regarding Sullivan's involvement was ultimately incorrect, it appeared reasonable at the time.

At oral argument, Rutledge's counsel argued that the description of the shooter as a "short male of average build" — a description that Sullivan roughly matched — was too vague to support Agent Quinn's theory that Rutledge and Sullivan were co-conspirators. Tr. 13:12-14:13. To the contrary, however, the CSLI Affidavit was specific in its factual allegations, stating that Sullivan's "height ranges from five feet three inches to five feet six inches and his weight is approximately 150 pounds," which is consistent with description of the shooter as "being a short male of average build."

Moreover, the Court must evaluate the "totality of circumstances," rather than factual allegations in isolation. *Lauria*, 70 F.4th at 128. Here, that Sullivan's physical characteristics matched the shooter's description was just one thread in the CSLI Affidavit's tapestry — as counsel concedes, there was probable cause to arrest Rutledge for his role in the robbery based on the surveillance video and law-enforcement observation, and Rutledge and Sullivan engaged in what was, by any

9

objective account, an unusual pattern of phone communication shortly before that robbery. It was thus apparent that Rutledge had co-conspirators and that he was using his cell phone shortly before the robbery. That Sullivan matched the description was only icing on the cake. For these reasons, and because Rutledge failed to show a disparity between Gomez's description and the shooter's, he is unable to overcome the "heavy burden" facing a defendant who argues that a warrant was issued on less than probable cause.[2] *Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991).

Thus, the Court cannot conclude, based on all the circumstances, that it was unreasonable for Magistrate Judge Scanlon to believe that there was a fair probability that evidence of the robbery would be found in Rutledge's CSLI, either because he had the phone on him when the crime was committed or he used the phone to facilitate the robbery conspiracy.

Two cases on which Rutledge relies are distinguishable and recognize that a flurry of calls before the alleged crime can establish probable cause.[3] In *Bertini*,

---

[2] As it turns out, Sullivan and Gomez are roughly the same height, at between 5'3"-5'6" and 5'7", respectively. *See* ECF 25-2 (Sullivan's physical description); ECF 25-3 (Gomez's physical description). As both men matched the height description of the shooter, and Gomez's height is consistent with the CSLI Affidavit, it was not unreasonable for the CSLI Affidavit to rely on the physical description as one component in the probable-cause determination.

[3] Another case on which Rutledge relies, *United States v. Garcia*, No. 3:20-CR-

where Judge Gardephe suppressed the CSLI because the agent's training, experience, and common sense were insufficient to supply probable cause without particularized facts, the court recognized that where the application alleged that the defendant used his cell phone to communicate with the suspected co-conspirator, "it might be reasonable to expect that he would carry his cell phone while committing the offenses." *Bertini*, 2023 WL 8258334, at *7.

In *Lauria*, the Second Circuit concluded that an affidavit with only two facts linking the defendant's phone to the crime — (1) the two codefendants were Facebook friends and (2) the defendant's cell phone was in communication with the other defendant's cell phone "shortly before" the robbery — was insufficient to demonstrate a "reasonable probability" that the phone records would contain evidence pertaining to robberies, especially where the warrant sought months of detailed CSLI. 70 F.4th at 129. The court was concerned that the affidavit provided only "sparse facts" relating to the phone calls in question, omitting when the calls happened and how many calls were made. *Id.* at 130. Moreover, there was no probable cause to believe that the defendant had participated in the subject robberies. *Id.* at n.14.

---

00058 (KAD), 2023 WL 4850553 (D. Conn. July 28, 2023), is a cell-phone search case, i.e., the contents of the cell phone, rather than CSLI, and is this inapposite.

11

By contrast, there was uncontroverted probable cause to believe that Rutledge participated in the robbery, and the CSLI Affidavit was detailed and sought CSLI for only several days. And *Lauria* also noted that under the right circumstances, a flurry of calls could "provide a reasonable basis to think it probable that the subject of the call was the robbery and that the call recipient was a confederate in the crime." *Id.*

Finally, even if the CSLI Warrant was invalid, the Court concludes that the evidence would nonetheless be admissible under the good-faith exception to the exclusionary rule, which holds that evidence seized in "reasonable, good-faith reliance on a search warrant" need not be suppressed. *United States v. Leon*, 468 U.S. 897, 904 (1984). Where "agents executing a search warrant act with an objectively reasonable good-faith belief that their conduct is lawful, improperly obtained evidence remains admissible." *United States v. Eldred*, 933 F.3d 110, 118 (2d Cir. 2019) (internal quotes omitted). The Second Circuit has elaborated that "most searches conducted pursuant to a warrant" fall within the good-faith exception. *United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011).

Rutledge argues that the application was so lacking in indicia of probable cause as to render reliance upon it unreasonable. However, because the factual allegations in the CSLI Affidavit were particularized and far from "bare bones, i.e.,

12

totally devoid of factual circumstances to support conclusory allegations," *Baines*, 2022 WL 35807, at *7 (holding good-faith exception would apply in CSLI case), the Court concludes the agents acted with objectively reasonable good-faith belief that their conduct was lawful.

### B. Apartment and Cell-Phone Warrants

Rutledge argues that evidence obtained from the Apartment and Cell-Phone Warrants should be suppressed under the fruit of the poisonous tree doctrine, which requires the exclusion of "evidence later discovered and found to be derivative of an illegality." *Utah v. Strieff*, 579 U.S. 232, 237 (2016). However, the evidence obtained from these Warrants should not be suppressed because the doctrine does not apply where the underlying CSLI Warrant was lawful. *See United States v. Barnes*, No. 22 CR. 109 (ER), 2022 WL 12399322, at *5 (S.D.N.Y. Oct. 21, 2022).

Rutledge argues that the Apartment Warrant was also not supported by probable cause. To establish probable cause to search a residence, "two factual showings are necessary—first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the residence." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983). The Apartment Affidavit set out several reasons why evidence was likely to be found

13

there: Rutledge parked his car near his girlfriend's apartment and was seen walking towards her apartment about 90 minutes after the robbery, the CSLI placed Rutledge there after the robbery, and Rutledge was seen entering and existing her apartment multiple times over the ensuing months. Even if the CSLI Warrant were invalid, these facts establish probable cause that evidence of the robbery was there.

While the search did take place about four months after the robbery — which Rutledge argues renders the information stale — there is "no bright-line rule for staleness." *Walczyk v. Rio*, 496 F.3d 139, 162 (2d Cir. 2007). In *Disla Ramos*, Judge Liman similarly rejected the staleness argument where the search occurred about four months after the robbery, albeit at the defendant's own home. *See* 2022 WL 17830637, at *13. Accordingly, probable cause supported the Apartment Warrant.

### III.   CONCLUSION

For the foregoing reasons, Rutledge's suppression motion is denied.

**SO ORDERED.**

    /S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
April 26, 2024

14