UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>-against-<br><br>MICHAEL RUTLEDGE,<br><br>Defendant. | **MEMORANDUM AND ORDER**<br>Case No. 23-CR-269-1 (FB) |

*Appearances:*
*For the Government:*
JAMES R. SIMMONS
VINCENT M. CHIAPPINI
Assistant United States Attorney
271 Cadman Plaza East
Brooklyn, NY 1120

*For the Defendant:*
ALLEGRA W. GLASHAUSSER
MICHAEL D. WEIL
CHARLES V. MILLIOEN
Federal Defenders of New York
One Pierrepont Plaza
16th Floor
Brooklyn, NY 1120

**BLOCK, Senior District Judge:**

On May 9, 2025, a jury convicted Defendant Michael Rutledge of conspiracy to commit Hobbs Act robbery (Count One), Hobbs Act robbery (Count Two), and possessing, brandishing and discharging a firearm during a crime of violence (Count Three) for serving as the getaway driver in the robbery of a Brooklyn convenience store. Before the Court is Rutledge's motion for a judgment of acquittal on Count Three[1] of the superseding indictment pursuant to Federal Rule of Criminal Procedure 29.

---

[1] Rutledge's letter briefs mid-trial, ECF No. 103 at 1, and post-trial, Def.'s Mem. at 2 n.1, ECF No. 114, purport to challenge all three counts but only make arguments regarding Count Three. Having no arguments to consider regarding Counts One and Two, the Court must deny the Rule 29 motion as to these counts. *See, e.g.*, *United States v. Thompkins*, No. S3 04CR.645, 2007 WL 1161234, at *2 (S.D.N.Y. Apr. 18, 2007) ("Defendant's arguments are conclusory and speculative, do not discuss any pertinent facts of the case or refer to and/or dispute any of the evidence presented at trial, and thus do not satisfy Defendant's heavy burden of demonstrating that a Rule 29 judgment of acquittal is appropriate in this case."); *United States v. White Plume*, No. 5:23-CR-50025, 2023 WL 6976584, at *2 (D.S.D. Oct. 23, 2023), *aff'd sub nom*. *United States v. Plume*, 110 F.4th 1130 (8th Cir. 2024) ("Courts have found that a defendant's blanket proclamation that the evidence presented at trial is insufficient to support a conviction does not satisfy the defendant's burden on a Rule 29 motion for judgment of acquittal or a Rule 33 motion for new trial." (citing *id.*)).

1

# I

Upon a defendant's Rule 29 motion, the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "In challenging the sufficiency of the evidence to support his conviction, a defendant bears a heavy burden."[2] *United States v. Hamilton*, 334 F.3d 170, 179 (2d Cir. 2003), *cert. denied*, 540 U.S. 985 (2003). The Court "must credit every inference that could have been drawn in the government's favor and affirm the conviction so long as, from the inferences reasonably drawn, the jury might fairly have concluded guilt beyond a reasonable doubt." *United States v. Reifler*, 446 F.3d 65, 94 (2d Cir. 2006) (citation modified). In doing so, the Court must "defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence." *United States v. Morrison*, 153 F.3d 34, 49 (2d Cir. 1998). The Court must also view the evidence as a whole and not "piecemeal or in isolation." *United States v. Klein*, 913 F.3d 73, 78 (2d Cir. 2019). "[T]he conviction must be upheld if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt[.]'" *Reifler*, 446 F.3d at 94–95 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Rutledge makes two sufficiency challenges to Count Three for unlawful possession, brandishing, and discharge of a firearm during a crime of violence under 18 U.S.C. § 924(c). He argues that a rational jury could not conclude that he either (1) had advance knowledge that Gomez had a gun or would use it in the robbery as required for aiding and abetting liability, or (2) reasonably foresaw that Gomez would use or carry a gun as required for co-conspirator liability. The government responds that the jury could have inferred both requirements based on

---

[2] Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

Rutledge's role in planning and executing the robbery. These are fact-specific inquiries driving the analysis of whether Defendant had the requisite advance knowledge for aiding and abetting liability, *see Rosemond v. United States*, 572 U.S. 65, 77 (2014), or the requisite foreseeability for co-conspirator liability. *See Pinkerton v. United States*, 328 U.S. 640 (1946) (co-conspirator liability).

This is a close case, but the facts support, albeit barely, the jury's verdict.

## II

On February 10, 2023, Rutledge drove two people—Angel Gomez and a person who has not been identified (the "unnamed individual")—from the Bronx to a convenience store in Brooklyn (the "store"), remained near the car while Gomez and the unnamed individual robbed the store, and then drove them back to the Bronx. The events unfolded as follows:

At 7:30 PM that day, New York Police Department ("NYPD") officer Amanda Proietto testified that she stopped Rutledge, who had parked his girlfriend's red Chevrolet Malibu (the "car")[3] in East Harlem, for public urination. Tr. 175:19–21.[4] A police body-worn camera and Officer Proietto's testimony placed the unnamed individual in the front passenger seat. Ex. 218-C;[5] Tr. 183:01. Officer Proietto testified that she issued Rutledge a summons and released him. *Id.* at 176:23–177:04. Call records introduced at trial showed that, at 8:59 PM, Rutledge called Gomez. Ex. 421 at 1. Text records showed that, following the call, Gomez texted the address of his Bronx residence to Rutledge. Ex. 501-D at 2.[6] Rutledge and the unnamed individual then picked up Gomez. Cell-site data placed Rutledge in the vicinity of Gomez's residence at

---

[3] The parties stipulated that Rutledge's girlfriend "acknowledged he drove the red Chevy Malibu during the entire evening of February 10, 2023." Ex. S-7.
[4] The Court will reference the trial transcript as "Tr." as it does not appear on the docket.
[5] The Court refers to exhibits introduced at trial as "Ex." as they do not appear on the docket.
[6] Ashley Hinkson, an intelligence research specialist with the NYPD, testified at trial that the phone number Rutledge texted in Ex. 501-D belonged to Gomez. Tr. at 299:01–300:03; 305:25–306:01.

3

9:24 PM, 9:30 PM, and 9:33 PM, before leaving the Bronx at approximately 10:18 PM. Ex. 416 at 11–12. According to street surveillance footage and cell-site and license plate recognition ("LPR") data, Rutledge then drove the unnamed individual and Gomez from the Bronx through Manhattan and into Brooklyn. Ex. 309 at 00:08–3:36; Ex. 411-B; Ex. 411-C; Ex. 416 at 12.

Street surveillance footage and cell-site data established that Rutledge drove down Park Avenue in Brooklyn and parked the car at the corner of Hall Street and Park Avenue by 10:53 PM, underneath an overpass of the Brooklyn-Queens Expressway. Ex. 309 at 1:15–3:28; Ex. 416 at 13. That evidence also showed that, at approximately 11:06 PM, Rutledge, Gomez, and the unnamed individual drove around the surrounding blocks, passing the store and returning to the original parking spot by 11:14 PM. *Id.*; Ex. 309 at 05:55–10:36. Rutledge had passed open parking spots near the store. *Id.* at 7:15. Rutledge was no stranger to this area in Brooklyn. NYPD detective Flabio Vargas testified that Rutledge worked "about a mile" away from the store, Tr. 147:18, and, according to employment records, Ex. 404-D, was in its vicinity about "forty-two times, approximately," Tr. 149:02, "from December 26, 2022, 'til March 3, 2023," *id.* at 149:04.

Surveillance footage showed that Rutledge then exited the car. Ex. 309 at 11:00. Gomez and the unnamed individual left minutes later, passing Rutledge, and walked towards the store, *id.* at 12:55, going down the same street that the three had just driven on, *id.* at 15:39–18:18. Minutes later, Gomez and the unnamed individual entered the store. *Id.* at 18:05–18:22. Security camera footage from inside the store disclosed what occurred thereafter. *Id.* at 18:23–21:00. The unnamed individual rounded the store counter to frisk the cashier, brandishing a knife (hereinafter, the "knifeman"). *Id.* at 18:30–18:35. As the knifeman rounded the counter, Gomez drew a handgun and pointed it at three customers and the cashier. *Id.* at 19:40–21:00. Wielding

4

the gun, Gomez corralled the customers in the back of the store while the knifeman emptied the register. *Id.* Gomez then pistol-whipped a customer and shot him in the leg. *Id.* at 20:25–20:40. Surveillance camera footage from the street showed that Gomez and the knifeman then fled the store and ran towards the car, up the block that they and Rutledge had just driven on. *Id.* at 20:42–22:55.

Meanwhile, street surveillance footage showed that Rutledge had walked away from his car. *Id.* at 14:19–15:18. He returned by 11:26 PM and turned on its lights by 11:27 PM, before he could see either the knifeman or Gomez. *Id.* at 21:32–21:50. Street surveillance footage showed that the knifeman and Gomez reached the car after Rutledge had returned. *Id.* at 21:23–22:52. Rutledge then drove to the Bronx, according to street surveillance footage and LPR and cell-site data. *Id.* at 23:00–27:58; Ex. 411-E; Ex. 416 at 15–16. Rutledge's Waze GPS application repeatedly instructed him to return towards the store, Ex. 501-K at 3, implying that his phone had been set to a destination near the store before the robbery, Tr. 507:21–510:03. Driving from the robbery, Rutledge searched Gomez's address on Waze, *see* Tr. at 322:22–323:01; Ex. 501-N at 2, and later appeared in its vicinity, according to cell-site data, Ex. 416 at 17. That cell-site data also established that Rutledge then left the vicinity of Gomez's address and appeared in the vicinity of his girlfriend's home that night. *Id.* at 18.

Text messages between Rutledge and his girlfriend around 11:00 AM on February 12, 2023, two days after the robbery, disclose that his girlfriend had asked him if he saw her watch. Ex. 501-J at 6. He told her to check the car and to "[l]ook in the back and on the sides, [and to] make sure there nothing anywhere back there from u know what." *Id.* at 7.

Rutledge and Gomez knew each other before the robbery. Ex. S-8. The parties stipulated that the two were neighbors and worked together for over one year between approximately April

5

2020 and May 2020. *Id.* They had call and text records dating back to at least October 24, 2022. Ex. 421; Ex. 501-D. In addition to their recent text messages, they had six calls between January 11 and 23, 2023, with the longest being six minutes; two in February before the robbery (for 28 seconds and five minutes); and three the day of the robbery (for 26 seconds, 19 seconds, and about two minutes). Ex. 421 at 1. The two had a three-minute call the morning after the robbery and continued to communicate until at least June 10, 2023. *See id.* at 1–3.

### III

**A. Aiding and Abetting Liability**

As for aiding and abetting liability, the Court concludes that the government presented sufficient evidence from which a rational jury could infer Rutledge's advance knowledge based on "the circumstances surrounding" the robbery. *United States v. Flores*, 945 F.3d 687, 715 (2d Cir. 2019); *see United States v. Grubczak*, 793 F.2d 458, 463 (2d Cir. 1986) (explaining that "knowledge that use of a dangerous weapon was fairly within the robbery plan need not, of course, be shown by explicit proof of expressed intention; the jury may infer such knowledge from the whole circumstances" (citation modified)); *see also United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008) (stating that "the government is entitled to prove its case solely through circumstantial evidence"). Specifically, these circumstances demonstrate that Rutledge "played a critical supportive role" as the driver such that the jury could infer that he coordinated his actions with Gomez and the knifeman ahead of time and thus knew about the entire robbery plan, including that Gomez would use a gun. *United States v. Gomez*, 580 F.3d 94, 103 (2d Cir. 2009). In *Gomez*, the Second Circuit found sufficient evidence to convict the defendant for "aiding and abetting a violation of Section 924(c)." *Id.* Like Rutledge, the defendant argued "that the evidence tying him specifically to the use of firearms, as opposed to showing merely his general

involvement in the robbery, was legally insufficient." *Id.* Disagreeing, the court explained that Gomez's presence "as a lookout at the scene" and his "critical supportive role in the armed robbery" justified his conviction. *Id.*

Rutledge cautions against the Court's reliance on *Gomez*, asserting that this pre-*Rosemond* case does not account for *Rosemond*'s advance knowledge requirement. But the Second Circuit long before *Rosemond* maintained that "a defendant cannot aid and abet a § 924(c) violation without knowing (or having reason to know) that a gun *will be* used or carried in relation to the underlying crime." *United States v. Medina*, 32 F.3d 40, 46 (2d Cir. 1994) (emphasis added). *Rosemond* "expanded aiding and abetting liability under Section 924(c) as previously recognized by [the Second Circuit], which required an act in furtherance of the use of the firearm, not merely the underlying offense." *United States v. Rivera*, 571 F. App'x 55, 59 n.5 (2d Cir. 2014) (summary order). In finding that a defendant "performed some act that facilitated or encouraged the actual using . . . of the firearm . . . [a] jury necessarily also ha[s] to find that [a defendant] had advance knowledge of the fire-arm related conduct, consistent with the Supreme Court's explication in *Rosemond*." *United States v. Young*, 561 F. App'x 85, 92 (2d Cir. 2014) (summary order).  District courts in the Second Circuit have held as such. *See, e.g.*, *United States v. Ramirez*, No. 13-CR-135, 2022 WL 2703596, at *10 (S.D.N.Y. July 11, 2022) (tracking aforementioned reasoning); *Trudeau v. United States*, No. 3:16-CV-273, 2017 WL 1754765, at *8 (D. Conn. May 4, 2017) ("[T]he idea of a foreknowledge requirement for aiding and abetting a gun crime predates *Rosemond*."). Thus, *Gomez* remains good law even after *Rosemond*.

Rutledge also argues that the cases quoting this portion of *Gomez* all feature concrete evidence of a defendant's specific knowledge that a gun would be used. *See, e.g.*, *United States v. Walker*, 830 F. App'x 12, 14 (2d Cir. 2020) (summary order) (upholding conviction where

7

"witnesses testified that [the defendant] facilitated and encouraged the use of firearms during the . . . robberies"); *United States v. Christian*, 111 F. Supp. 3d 287, 300 (E.D.N.Y. 2015) (witness testified to seeing the defendant standing on the roof from where a machinegun was being fired); *United States v. Davis,* 996 F. Supp. 2d 225, 236 (S.D.N.Y. 2014) (defendant admitted to knowing that firearm would be used in robberies); *United States v. Gonzalez*, No. 08-CR-363, 2010 U.S. Dist. LEXIS 46627, *14 (S.D.N.Y. May 11, 2010) (witness testified that defendants discussed the gun and knew it was in the car they were driving); *United States v. Santana*, 552 Fed. Appx. 87, 90 (2d. Cir. 2014) (codefendant testified that appellant was armed during the robbery). While there is not as much evidence connecting Rutledge to the gun as in these other cases, the jury could still have inferred Rutledge's requisite advance knowledge from his "critical supportive role," evidenced by the circumstances surrounding the robbery. *Gomez*, 580 F.3d at 103.

     Rutledge drove his car to pick up the knifeman and Gomez, who Rutledge had known for years and communicated with the day of the robbery and in the preceding days. The jury could have inferred either that Rutledge wanted Gomez's participation because Rutledge knew Gomez had a gun, or that Rutledge just wanted an extra body and thought the knife sufficient for the robbery. Either way, both inferences are reasonable, and the Court must resolve "all reasonable inferences . . . in favor of the government." *United States v. Anderson*, 747 F.3d 51, 60 (2d Cir. 2014). Rutledge then drove Gomez and the knifeman to Brooklyn from the Bronx to rob a convenience store located in a neighborhood near Rutledge's job. From that connection, the jury could have inferred that Rutledge chose, or at least suggested, this target. The jury could have also inferred that the three discussed the robbery in Rutledge's car, and that Gomez had the gun on him while in the car. Rutledge contends that the knifeman and Gomez might have discussed

the gun outside of Rutledge's presence. But the knifeman and Gomez were only away from Rutledge after the two had exited the car and were on their way to rob the store.

Upon arrival, Rutledge parked on the north-western corner of the store's block, drove around the block on the streets the knifeman and Gomez would use to go to and later flee from the store, and returned to his initial parking spot, eschewing parking near the store. Rutledge inferably understood the purpose of this loop around the block, evincing his knowledge of the robbery plan and his critical role in it. Before the robbery, Rutledge exited the car and wandered the surrounding blocks, returning to the car right before the knifeman and Gomez returned. It is inferable that the three approximated the robbery's timing, further demonstrating Rutledge's participation in the plan. The robbery itself was coordinated, with Gomez using the gun to subdue customers and the knifeman emptying the register. The jury could have inferred that Rutledge, while in the car with them, knew of this plan. Finally, Rutledge drove the knifeman and Gomez from the scene of robbery, playing that critical getaway role.

The government also points to text messages between Rutledge and his girlfriend after the robbery where, upon his girlfriend asking if he saw her watch, he told her to check the car and to "[l]ook in the back and on the sides, [and to] make sure there nothing anywhere back there from u know what." Gov't Resp. at 10, ECF No. 115. The jury could infer that Rutledge referred to an illegal act like the robbery, for which he used that same car. Rutledge retorts that "u know what" could be "anything that a couple would not want found," and not necessarily something illegal. Def.'s Reply at 7, ECF No. 116. But these text messages were private, between Rutledge and his girlfriend. No one would see these texts unless someone somehow got ahold of his or her phone, or the government subpoenaed the texts as part of a criminal investigation. A rational jury could infer that Rutledge attempted to cover his tracks in case of the latter.

9

*United States v. Hampton* is particularly instructive. 676 F. Supp. 3d 283 (S.D.N.Y. 2023), *aff'd*, No. 23-7810, 2025 WL 1157170 (2d Cir. Apr. 21, 2025). There, a jury convicted Hampton for, *inter alia*, Hobbs Act robbery and a § 924(c) violation. *Id.* at 285. In denying Hampton's Rule 29 motion, the court found sufficient evidence to convict Hampton for aiding and abetting another robber's gun use because the jury could infer actual knowledge. *Id.* at 296–97. "When five robbers walk into a store and one of them promptly points a gun at the employee and demands cash, a logical inference is that the other robbers had knowledge of the plan to rob the store at gunpoint." *Id.* at 297 Here, Gomez entered the store alongside the knifeman and brandished the gun shortly after exiting Rutledge's car.

Rutledge distinguishes this by emphasizing that the *Hampton* court also relied upon evidence that Hampton had participated in a similar armed robbery "the previous day." *Id.* (explaining that inference drawn from "five robbers walk[ing] into a store . . . is especially true where, as here, the jury could find that the same robbers committed a similar robbery (also at gunpoint) the previous day and proceeded to commit several additional robberies in a similar fashion"). But that past crimes evidence merely made "especially true" the inference of advance knowledge that already existed based on "the logical inference" that Hampton, taking part in a robbery, had to know its plan. *See id.* The circumstances surrounding the robbery provide similar support.

The government cites several out-of-circuit authorities, the most helpful being *United States v. Moore*. 843 F. App'x 498 (4th Cir. 2021) (unpublished opinion). In *Moore*, the Fourth Circuit affirmed the § 924(c) conviction of a getaway driver for two armed robberies where a robber carried a gun. *See id.* at 500. Denying Moore's sufficiency arguments for aiding and abetting liability, the court explained that a jury could have inferred his advance knowledge

10

"[g]iven evidence of Moore's substantial participation in the planning, preparation, and execution of the robberies[.]" *Id.* at 502. Like Rutledge, Moore communicated with the gunman before the robbery, "helped obtain the vehicles used in the robberies," drove his accomplices to a distant robbery location, and "was in close proximity to his armed accomplice moments before he entered the [store] and moments after the commission of the robber[y]." *See id.* Further, the "robberies were of the type that would generally necessitate the use of a firearm" because Moore "would have known that employees and potential customers would be in the store, thereby necessitating the need for a firearm to restrain the victims." *Id.*

Rutledge's arguments for distinguishing *Moore* are unconvincing. It is true that, unlike Rutledge, Moore confessed to one of the robberies, was arrested with a gun resembling that used in the second robbery, received a text from the conspiracy's leader asking him to serve as the driver, and had more extensive communications with that leader than Rutledge did with Gomez. *See id.* at 500, 502. But these differences do not render *Moore* inapposite. Despite the limited evidence, the jury could infer that Rutledge played an important role in planning, preparing, and executing the robbery by obtaining and driving the car. Further, Rutledge seeks to distinguish the convenience store that his group robbed from the jewelry store robbed in *Moore*, arguing that the security systems—secured vaults and panic alarms, for example—in the latter that might require robbers to have a firearm. But the court in *Moore* emphasized that a gun was inferably necessary to restrain "employees and potential customers" in the jewelry store, not because of its security system. *See id.* at 502. Just as in *Moore*, Gomez did exactly this, brandishing his gun to corral customers in the back of the store while the knifeman handled the cashier.

11

The cases proffered by Rutledge do not change the Court's conclusion. In *United States v. Prado*, the Second Circuit reversed a conviction for aiding and abetting a violation of § 924(c) based on a lack of proper advance knowledge instruction per *Rosemond*. 815 F.3d 93, 103–04 (2d Cir. 2016). The court explained that an error in jury instructions is reversable where it "affect[s] the jury's verdict[.]" *Id.* at 103. In finding "a reasonable probability of a different trial outcome had the jury been properly instructed," the court explained that "[t]he only evidence indicating that Ortega knew about the gun was that after the group left Amaya's house, they spent approximately ten to fifteen minutes in the parking lot outside[.]" *Id.* at 104. A cooperating witness saw this and testified that he thought "they were loading the gun." *Id.*

Rutledge argues that the lack of comparably significant evidence in his case warrants acquittal. Not so. The government here arguably presented more extensive and stronger, although circumstantial, evidence of advance knowledge than in *Prado*. Even so, the standard governing reversal for improper instructions differs from that for insufficient evidence. Unlike the former, which demands reversal where there is a reasonable probability of a different outcome with proper instructions, the latter mandates acquittal where no reasonable jury could convict on the evidence at trial. *Cf. Kyles v. Whitley*, 514 U.S. 419, 435 (1995) (explaining that "[t]he possibility of an acquittal on a criminal charge does not imply an insufficient evidentiary basis to convict," albeit in context of *Brady* materiality). On a sufficiency challenge, the Court must accept the jury's reasonable conclusion, even if there is a reasonable probability of a different outcome. *See Anderson*, 747 F.3d at 59–60. *Prado* confirms this, stating that "to the extent that Ortega brings a separate sufficiency of the evidence challenge . . . this challenge fails." *Id.* at 104 n.3.

Next, Rutledge cites *United States v. Thompson*, where the Fifth Circuit vacated a § 924(c) conviction of a getaway driver. 454 F.3d 459, 466 (5th Cir. 2006). There, two men,

12

Thompson and Carter, robbed the same bank twice in one year, with Thompson brandishing a gun and Carter acting as the driver. *Id.* at 462. Finding insufficient evidence to convict Carter for aiding and abetting a § 924 violation during the first robbery, the court explained that "knowledge that a gun was used in the second robbery, however, is not conclusive evidence of knowledge that it would be used in the first." *Id*. Here, however, the government presented evidence primarily involving events that occurred before and during the very robbery on which Rutledge's § 924 conviction rests. The *Thompson* court further explained that "[m]oreover, the perpetrators evidently believed when planning the [first] robbery that only one bank employee would have to be subdued in the course of the crime [because the robbery occurred before the bank opened], which by itself would not necessarily require the use of a gun." *Id.* Unlike **in** *Thompson*, Rutledge's accomplices robbed the store when it was open, requiring them to subdue the cashier and potential customers and supporting the jury's inference that everyone knew a gun would be used.

      Finally, Rutledge argues that the government impermissibly presented a hypothetical conversation between Rutledge and Gomez in its rebuttal[7] and erroneously characterized evidence in its closing. Regarding the rebuttal, the government did not impermissibly "insinuate that it had more evidence incriminating [Rutledge] in the charged crimes that it had not been allowed to offer in evidence." *United States v. Ballard*, 727 F. App'x 6, 10 (2d Cir. 2018) (summary order). Rather, the government permissibly "attack[ed] the credibility of [Rutledge's] version of events" in a way that "the jury would have reasonable understood . . . . to be a

---

[7] Specifically, "[t]he government asserted, 'Of course, the defendant knew they were gonna have a gun. You didn't think the defendant ever asked them: Hey, guys, I know we're gonna do a robbery, but what are you planning to do once you get inside? Did he think that they were just gonna go in the store and start yelling and acting scary? Did they think Gomez was gonna go in there bare-handed? Of course, not. They told him ahead of time.'" Def.'s Mem. at 8.

13

rhetorical device employed by the prosecutor to respond to the evidence, issues, and hypotheses propounded by the defense." *United States v. Reynoso-Hiciano*, No. 22-1044-CR, 2024 WL 461706, at *2 (2d Cir. Feb. 7, 2024), *cert. denied*, 144 S. Ct. 2618 (2024) (citation modified). As for the closing, the government was "free to make arguments which may be reasonably inferred from the evidence presented." *United States v. Roldan-Zapata*, 916 F.2d 795, 807 (2d Cir. 1990). A jury could reasonably infer that Rutledge "knew what kind of man Angel Gomez was" from evidence of different ammunition types recovered from Gomez's apartment months after the robbery. *See* Def.'s Mem. at 6.

Although the evidence presented at trial was weaker than in many similar cases, a reasonable jury could nonetheless "conclude guilt on each and every element of" Count Three under an aiding and abetting theory of liability. *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984). The Court cannot disturb "the jury's determination of the weight of the evidence" and its "choice of the competing inferences that can be drawn from the evidence." *Morrison*, 153 F.3d at 49. Thus, the Court finds sufficient evidence to support Rutledge's conviction on Count Three for aiding and abetting a § 924(c) violation.

**B. Co-Conspirator Liability**

Having found sufficient evidence to support the jury's conviction on Count Three under aiding and abetting liability, the Court need not reach Rutledge's arguments regarding the sufficiency of the evidence for co-conspirator liability. But the Court will address them, in the alternative, should the Circuit Court conclude that the evidence was insufficient to support aiding and abetting liability.

Co-conspirator liability, also known as "[t]he *Pinkerton* theory[,] permits criminal liability of a conspirator for the substantive crimes committed by his co-conspirators to the extent

those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement, even if he did not himself participate in the substantive crimes." *United States v. Bala*, 236 F.3d 87, 95 (2d Cir. 2000) (citation modified); *see Pinkerton v. United States*, 328 U.S. 640 (1946). "An offense by a co-conspirator is deemed to be reasonably foreseeable if it is 'a necessary or natural consequence of the unlawful agreement.'" *United States v. Parkes*, 497 F.3d 220, 232 (2d Cir. 2007) (quoting *Pinkerton*, 328 U.S. at 648)). "The same evidence" that supported Rutledge's advance knowledge of the gun can also support the reasonable foreseeability of the gun. *See United States v. Gahagen*, 44 F.4th 99, 109 (2d Cir. 2022).

Rutledge argues there was insufficient evidence that he should have reasonably foreseen that Gomez would use a gun. Specifically, Rutledge emphasizes the lack of evidence that he had seen Gomez use a gun in the past, had known that Gomez used or carried a gun in the past, or any other information indicating that Gomez would carry a gun as opposed to a knife. The government responds, as with aiding and abetting liability, that the circumstances of the crime and Rutledge's personal involvement in its planning and execution evince the requisite foreseeability.

The Court is persuaded that the government presented sufficient evidence from which a rational jury could infer that Rutledge reasonably foresaw that Gomez would use a gun. "The *modus operandi* of these robbers certainly supports a jury's common-sense inference to that effect." *Grubczak*, 793 F.2d at 463. In *Grubczak*, the defendant and his co-conspirators stole millions in cash from a bank vault, loaded the money into an armored car owned by the bank, and fled in it. *Id.* at 459–60. Looking to the circumstances of the robbery, the court found "sufficient evidence from which the jury reasonably could infer that defendant was aware of the likelihood that a gun would be used." *Id.* at 463.

Rutledge distinguishes *Grubczak* by emphasizing the relatively unsophisticated and unorganized nature of his robbery, and that robbing a bank, versus the store, involved "a far greater risk of encounter with arms and armor, and therefore, a more obvious likelihood that the use of weapons by the robbers would be required." *Cf. id.* That is true, but "there was always the possibility that passing police would notice two men" fleeing the store. *Id.* (quoting *United States v. Wardy*, 777 F.2d 101, 106 (2d Cir. 1985)). Even so, "[i]ndependent of these considerations, there is no doubt that the evidence of defendant's substantial involvement strongly supports the conclusion that he was one of the principal players in the robbery. As such, the inference that he had to have been aware of the likely use of a gun is compelling." *Id.* Like the defendant in *Grubczak*, Rutledge "played the lead role in the final phase of the robbery"—the getaway. *Id.*; *see U.S. v. Zayac*, 765 F.3d 112, 122 (2d Cir. 2014) (explaining that "the escape phase . . . is part of the robbery" (citation modified)). That reason and the other circumstances described in the Court's discussion of aiding and abetting liability make *Grubczak* highly persuasive.

Nor do the cases cited by Rutledge justify another conclusion. Many affirm convictions based on past participation in armed robberies with the same co-conspirators, *see, e.g.*, *United States v. Santana*, 552 F. App'x 87, 90 (2d Cir. 2014) (summary order), or testimony confirming the plan to use a gun, *see, e.g.*, *United States v. Lloyd*, 631 F. App'x 45, 49 (2d Cir. 2015) (summary order). But a jury could still infer reasonable foreseeability from other circumstantial evidence, like a defendant's substantial role in a robbery. *See Grubczak*, 793 F.2d at 463.

Rutledge marshalls one case in which the district court granted a defendant's Rule 29 motion for acquittal on the defendant's § 924(c) conviction, *United States v. Graziano*. 616 F. Supp. 2d 350, 353 (E.D.N.Y. 2008). There, Graziano hired a co-conspirator to commit arson. *Id.* at 368. Graziano "was not present when the fire was set, nor was he ever told of the method his

16

co-conspirators would use to start the fire." *Id.* The court agreed that "no rational jury could conclude . . . that it was reasonably foreseeable to Graziano that his co-conspirator would use an incendiary bomb to set a 'small fire[.]'" *Id.* at 366. "In particular . . . there [was] a complete absence of proof regarding how the arson would be accomplished." *Id.* at 368. The only evidence was the arsonist's testimony that he would set "a small fire." *Id.* at 369. The court explained that setting a small fire was "inconsistent with [the arsonist's] later decision (on his own) to use an incendiary bomb to set the fire at night at a stationery store filled with papers, cards, and other flammable materials." *Id.* Further, the remaining circumstantial evidence either undermined foreseeability or required "stack[ing] inference upon inference[.]" *Id.* at 371. For example, the jury would have needed to infer that the arson would occur at night, requiring a break in, which would require the arsonist to hurry, which would then require him to "throw a destructive device through a broken window." *See id.*

Unlike the defendant in *Graziano*, who hired an arsonist and did not take part in the plan besides agreeing to a "small fire," Rutledge knew Gomez for years and played a critical role in the robbery by, among other acts, serving as the getaway driver. And while the use of an incendiary device is inconsistent with starting a "small fire," the use of a gun is consistent with robbing a store foreseeably occupied by customers. Most importantly, the circumstantial evidence in Rutledge's case each independently supports the same inference—that Rutledge played a role in planning and executing the robbery and knew its full scope. Conversely, the inferences in *Graziano* are non-sensical without considering them collectively and thus cannot exist independently.

17

Rutledge correctly points out that the robbery itself cannot make it reasonably foreseeable that a gun would be used in its commission. The Court explained as much when instructing the jury on co-conspirator liability:

> You cannot base a determination of reasonable foreseeability on the robbery alone. Co-conspirator liability requires separate evidence, besides the robbery itself, that the defendant could reasonably foresee that a co-conspirator would knowingly use or carry a firearm during and in relation to, or possess a firearm in furtherance of, the robbery. Such evidence may include, but is not limited to, the defendant's actions, conversations, observations, and/or prior interactions.

ECF No. 108 at 39–40. There was such additional evidence here. Rutledge's actions and the circumstances surrounding the robbery "in its totality" support the rational inference that he knew the plan for the robbery and could reasonably foresee that Gomez would carry or use a gun in furtherance of it. *See United States v. Florez*, 447 F.3d 145, 154 (2d Cir. 2006). "Viewing the evidence in the light most favorable to the government and drawing all inferences in the government's favor," the Court finds that a reasonable jury could conclude that Rutledge reasonably foresaw that Gomez would carry and use a gun in furtherance of the robbery. *See Parkes*, 497 F.3d at 232. There is thus sufficient evidence to sustain Rutledge's conviction on Count Three under co-conspirator liability.

## Conclusion

Accordingly, Rutledge's Rule 29 motion for a judgment of acquittal on Count Three is DENIED.

**SO ORDERED.**

  /S/ Frederic Block    
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
September 29, 2025